## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 28 2017, 9:20 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Christopher L. Clerc
Columbus, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine Modesitt Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Antonio Luis Gonzalez, <br> *Appellant-Defendant*, <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff*. | September 28, 2017 <br><br> Court of Appeals Case No. <br> 03A01-1705-CR-1168 <br><br> Appeal from the Bartholomew <br> Circuit Court <br><br> The Honorable Kelly S. Benjamin, <br> Judge <br><br> Trial Court Cause No. <br> 03C0l-1609-F5-5300 |

**Brown, Judge.**

[1] Antonio Luis Gonzalez appeals his sentence of four years and six months with three years executed and one year and six months suspended to probation for domestic battery resulting in injury to a pregnant woman as a level 5 felony. Gonzalez raises one issue which we revise and restate as whether his sentence is inappropriate in light of the nature of the offense and his character. We affirm and remand.

## Facts and Procedural History

[2] In late August or September, 2016, Gonzalez, knowing that his girlfriend was pregnant, did knowingly or intentionally touch her in a rude, insolent, or angry manner resulting in bodily injury.[1] On September 27, 2016, the State charged Gonzalez with domestic battery resulting in injury to a pregnant woman as a level 5 felony. On March 20, 2017, Gonzalez pled guilty pursuant to an agreement with the State which provided that he plead to guilty to domestic battery resulting in injury to a pregnant woman as a level 5 felony under the cause from which this appeal arises, that the State agreed not to amend the charges in another cause to include strangulation and domestic battery resulting in bodily injury to a pregnant woman and to dismiss that case, and that

---

[1] The charging information in the record alleges Gonzalez committed the offense on or about August 28, 2016, and the date September 12, 2016, was crossed out. At sentencing, defense counsel indicated, in asking the victim about the incident, that it occurred on September 12, 2016. The presentence investigation report states the offense occurred on or about August 28, 2016. The record does not include a transcript of the March 20, 2017 change of plea hearing.

Gonzalez would be ordered to have no contact with the victim but that that term may be modified at the court's discretion upon her request.

[3] At sentencing, Gonzalez testified that he was twenty-one years old, that he would like to receive counseling for his anger and medication if he needs it, that in the year 2016 he probably drank more than he had ever drank in his life, and that he would like to receive treatment for his alcohol use. He also expressed remorse for his actions. When asked by the prosecutor if all he did was push the victim, Gonzalez testified:

> I pushed her . . . I was . . . I don't recall everything that happened that day. I was . . . I was drunk. I pushed her into the wall and looked at her and she's on the floor (inaudible) . . . and I said why are you crying, what happened, what's wrong and she said what happened. I don't want to talk about because I don't remember, but I was drunk and I do not remember and she was scared and she was hurt and looking . . . the look of fear in her face, I realized I did something wrong and I never want to go back to that day again, to be honest with you. I don't want to think about it, but I have to.

Transcript at 15.

[4] Gonzalez agreed that the victim was eight months pregnant and that she told police that he had kicked her three times in the stomach, and when asked if he believed that was true, he replied "I believe that's true." *Id.* The prosecutor stated "[a]nd then she told the police officer that she was hoping you'd have a change of heart once your child was born but she became scared again when you told her that if you weren't holding the child, you would hit her. Do you

remember that," and Gonzalez answered "I do not remember that." *Id.* at 16.
When asked "[d]o you believe that's true," he answered "[a]t that moment in
life, I do believe it's true. At the point I was at, just everything I was going
through, yes." *Id.* Gonzalez indicated he smoked marijuana on and off since
he was sixteen, and that he was suspended from school for arguing with
teachers in 2013.

[5] Gonzalez's mother testified that she believed Gonzalez's being in jail has taught
him how to change, to control himself, to be patient, and to accept things as
they are. She also indicated that, if the judge so ordered, she would allow
Gonzalez back in her home on home detention or some kind of monitoring
program.

[6] The victim, when asked "September 12th, 2016. That was right before you had
your baby. . . tell the Court what he did physically towards you," testified:

> So, I guess, once again, we had got into a fight. I had found
> some stuff that made be [sic] aggravated. I confronted him about
> it. It aggravated him. We had started going back and forth.
> Well then that's when he lashed out, had one of his episodes and
> threw me up against the wall and it kind of star gazed me and so
> I winded up falling and he kicked me in the stomach, when I was
> pregnant and he, I don't know, maybe two minutes later, comes
> back to me, sees that I'm just crying and laying there holding my
> stomach and then he later on, you know, it's like, yeah, do we
> need to go get checked out? Are you okay?

*Id.* at 30. The victim further indicated Gonzalez kicked her "[r]ight above [her]
belly button" and "kicked [her] three times" in the same place. *Id.* at 31. When

asked "[h]ard kicks, soft kicks, I don't know that it matters," she answered "I mean, it wasn't like he straight punted me, like a football, no. But he kicked me hard enough through me to feel it." *Id.* She indicated that Gonzalez kicked her when she was down, that he did not help her up and walked away, and she "crawled up to the couch pulled [her]self onto the couch and laid there." *Id.* at 31-32. She indicated that Gonzalez drove her to the hospital the next day.

[7] When asked if she believed Gonzalez when he said he has changed, the victim replied "[a]t first I had mixed emotions because that is something that I feel like everybody says . . . But to hear him and see him broken like I had just seen, . . . I can't even tell you how many times I've ever seen him cry" and "I can't count it on one hand. But I've seen him and that was the Anthony I know. That was the emotion that I needed to see a really long time ago. So he gave me closer [sic] today that I needed. To show me that he is working towards being a better person." *Id.* at 36-37. When asked "after he . . . kicked you and you went to bed and I understand then that you still [were] having cramping and such because of that, correct," the victim answered affirmatively, and when asked "so the need to take care of you and go to the hospital was . . . directly related to him kicking you," she answered "[y]es, I will agree with that. I had had issues beforehand where . . . they were really scared I was going to go preterm labor anyway . . . [s]o I was already starting to cramp, but that just didn't make it any better, if that makes sense." *Id.* at 37. When asked "from what I read, . . . he's holding your . . . little infant son and he looked you in the face and said, if I wasn't holding this child, I'd punch you in the face," the victim answered

"[y]es." *Id.* at 38. When asked "[s]o did he threaten to harm you physically," she answered affirmatively, and when asked "[a] lot?" she answered "[i]t was just when he was drunk, it's nasty, snide comments here and there and that was just one of them." *Id.* When asked "[w]hen he's drinking, he's physically and verbally abusive to you," she answered "[y]es . . . [o]ff the chart, yes." *Id.* at 39.

[8] The trial court found the following aggravating factors: Gonzalez's criminal history of two misdemeanors, he has been placed on probation previously, and the victim was eight months pregnant. The court found that the mitigating factors included: Gonzalez's youth and limited criminal history. It sentenced him to four years and six months with three years executed and one year and six months suspended to probation, and recommended that he be placed in a program for substance abuse and a domestic violence program.

## *Discussion*

[9] The issue is whether Gonzalez's sentence is inappropriate in light of the nature of the offense and his character. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[10] Gonzalez argues that the facts underlying the change to which he pled guilty do not differ significantly from a "typical" offense and that the battery had already

been enhanced to a level 5 felony because it resulted in bodily injury to a pregnant woman and he was aware of the pregnancy. Appellant's Brief at 10. He argues he pled guilty and took responsibility for his actions, that he had little criminal history, and that his mother and the victim testified they had seen positive changes in him and asked that he be released from incarceration. He requests this court to revise his sentence to three years fully suspended.

[11] The State responds that the victim was eight months pregnant at the time of the offense and that Gonzalez offers no evidence which shows that he acted with restraint, regard, or lack of brutality. It further argues that he has prior misdemeanor convictions and a juvenile adjudication for battery resulting in bodily injury and he has received the benefit of probation but it did not deter him from committing this crime.

[12] Ind. Code § 35-50-2-6 provides that a person who commits a level 5 felony shall be imprisoned for a fixed term of between one and six years, with the advisory sentence being three years. The court sentenced Gonzalez to four years and six months with three years executed and one year and six months suspended to probation.

[13] Our review of the nature of the offense reveals that Gonzalez, knowing that his girlfriend was pregnant, knowingly or intentionally touched her in a rude, insolent, or angry manner resulting in bodily injury. According to Gonzalez, he pushed the victim into the wall, he was intoxicated, he saw the look of fear in her face, and he believed it was true that he kicked her three times in the

stomach. According to the victim, Gonzalez lashed out and threw her up against the wall and that, after she fell, he kicked her in the stomach right above her belly button three times. She also indicated that he drove her to the hospital the next day and that the need to take her to the hospital was directly related to him kicking her.

[14] Our review of the character of the offender reveals that Gonzalez pled guilty more than five months after being charged pursuant to an agreement which provided that the State agreed not to amend the charges in another cause to include strangulation and domestic battery resulting in bodily injury to a pregnant woman and to dismiss that case, and that Gonzalez would be ordered to have no contact with the victim but that that term may be modified at the court's discretion upon her request. The presentence investigation report ("PSI") indicates that Gonzalez was born in April of 1995, and that, as a juvenile, he had an adjudication for battery resulting in bodily injury in September 2012 that would be a class A misdemeanor if committed by an adult and received twenty-three days in a juvenile detention center. The PSI further shows that, as an adult, he was convicted of contributing to the delinquency of a minor as a class A misdemeanor and possession of marijuana as a class B misdemeanor in 2015 for which he received a sentence of 365 days all suspended to probation. Gonzalez reported that his girlfriend confronted him about cheating on her, they had a heated argument, he admitted he did cheat on her with other women, she pushed him and he pushed her back, he was drinking at the time, and that he made a mistake. He reported that his family

lived with other family members and also lived in their van, his father used the family's money on drugs and was abusive to his mother, his mother sent him to live with his uncle who had a drug problem at age thirteen, his uncle shot himself in the car, he and his aunt were in the store and found his uncle when they returned to the car, and that six months later his father died of a drug overdose. He reported that he was suspended for arguing with teachers, started to get into trouble at school when he was approximately eleven years old, and that he was diagnosed with oppositional defiant disorder when he was thirteen years old. At sentencing, Gonzalez indicated he smoked marijuana on and off since he was sixteen and that he probably drank more alcohol in 2016 alone than he ever had in his life. With respect to the Indiana Risk Assessment System Community Supervision Tool, that the PSI states his overall risk assessment score places him in the high risk to reoffend category. It also states, with respect to complementary assessment instruments, that "ODARA assessment results indicate that [Gonzalez] has an approximate 60% risk to commit a new domestic violence act." Appellant's Appendix Volume II at 29.

[15]     After due consideration, we conclude that Gonzalez has not sustained his burden of establishing that his sentence of four years and six months with three years executed is inappropriate in light of the nature of the offense and his character.[2]

---

[2] To the extent Gonzalez argues the court abused its discretion in not considering his guilty plea as a mitigating factor, we need not address this issue because we find that his sentence is not inappropriate under Ind. Appellate Rule 7(B). *See Chappell v. State*, 966 N.E.2d 124, 134 n.10 (Ind. Ct. App. 2012) (noting that any

## *Conclusion*

[16] For the foregoing reasons, we affirm Gonzalez's sentence.

[17] Affirmed.

Najam, J., and Kirsch, J., concur.

---

error in failing to consider the defendant's guilty plea as a mitigating factor is harmless if the sentence is not inappropriate) (citing *Windhorst v. State,* 868 N.E.2d 504, 507 (Ind. 2007) (holding that, in the absence of a proper sentencing order, Indiana appellate courts may either remand for resentencing or exercise their authority to review the sentence pursuant to Ind. Appellate Rule 7(B)), *reh'g denied*; *Mendoza v. State,* 869 N.E.2d 546, 556 (Ind. Ct. App. 2007) (noting that, even if the trial court is found to have abused its discretion in sentencing, the error is harmless if the sentence imposed is not inappropriate), *trans. denied*), *trans. denied*.